UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEMETRIUS GOHRE,

        Plaintiff,

    v.                                      Case No. 21-C-370

ALEJANDRO LEZAMA,

        Defendant.

## DECISION AND ORDER

Plaintiff Demetrius Gohre is representing himself and proceeding against Defendant Alejandro Lezama based on allegations that Defendant used an unreasonable amount of force against Gohre while transporting him to court for trial. On May 16, 2022, Defendant filed a motion for summary judgment, which the Court will deny.

## BACKGROUND

At the relevant time, Gohre was a pre-trial detainee, and Defendant was a Milwaukee County Sheriff's deputy assigned to work at the Milwaukee County Jail. On February 24, 2021, Defendant transported Gohre from the jail to the Milwaukee County Courthouse for his second day of trial. Gohre was wearing street clothes and was handcuffed behind his back. When the elevator doors to the courthouse hallway opened, Gohre observed his mother and attorney; no one else was in the hallway. Gohre said "hi" to them. According to Gohre, Defendant shouted, "Shut the f*** up!" more than once. Dkt. No. 43 at ¶¶1-7; Dkt. No. 45 at ¶¶8-10; Dkt. No. 46 at ¶¶3-4.

Gohre explains that he understood Defendant to be ordering him not to talk to his mother and attorney, an order with which he complied, but Gohre said to Defendant, "That's my attorney

and my momma." In response to Gohre's explanation, Defendant slammed Gohre's head and face into the wall several times before escorting him through the outer courtroom doors. Gohre explains that he did not resist Defendant or try to get away, but he did say, "Man, what is you doin'?" and "Let me go." Gohre explains that after going through the outer courtroom doors, Defendant "used his forearm to press against the base of [Gohre's] skull and smash [his] head into the courtroom wall three times." Gohre asserts that he was disoriented, dazed, and afraid. Defendant then escorted Gohre through the inner courtroom doors and said, "Shut the f*** up before I put you down." No force was used against Gohre after Defendant escorted him through the inner courtroom doors into the courtroom. Dkt. No. 43 at ¶¶10-15; Dkt. No. 45 at ¶¶10-15; Dkt. No. 46 at ¶¶4-8.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Gohre was a pretrial detainee at the relevant time, so his claim arises under the Fourteenth Amendment. To survive summary judgment, Gohre must present evidence creating a triable issue on the question of whether the force Defendant used against him was "objectively unreasonable." *See Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015). The Supreme Court has explained that a "court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397 (citations omitted). Relevant considerations include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citations omitted).

Defendant did not submit a declaration or affidavit detailing his version of what happened. But according to Gohre, after he greeted his mother and attorney and Defendant told him to "shut up," he spoke only to Defendant to explain his relationship to the people he had just greeted. Gohre states that he never physically resisted Defendant's efforts to escort him, nor did he try to flee. In response to Gohre's explanation, Defendant tightened his grip on Gohre's handcuffs and then pushed Gohre against the wall two different times, resulting in Gohre's face and head "smashing" into the wall about six times. The force was significant enough to leave Gohre disoriented, dazed, and afraid.

3

Gohre concedes that he then yelled out, asking Defendant what he was doing and telling him to let him go. A Lieutenant of the Professional Standards Division at the Milwaukee County Sheriff's Office explains that "verbal noncompliance, including statements like 'let me go,' is active resistance" and that "[a]ttempting to walk away from an officer while on transport through unsecured areas of the courthouse represents a safety/security risk," both of which "requir[e] heightened officer response." Dkt. No. 28 at ¶¶18-19. But Gohre states that he never tried to get away and that he cried out only to make Defendant "[s]top smashing [his] head into the wall." Dkt. No. 46 at ¶8. On this record, a jury could reasonably conclude that Gohre did not pose a threat and that he was at most passively resisting when he continued to talk, making Defendant's escalation of force disproportionate and therefore unreasonable. *See, e.g.*, *Phillips v. Cmty Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012) ("[W]illful non-compliance [is] not the same as 'actively resisting' but instead a passive 'resistance requiring the minimal use of force.'" (citations omitted)); *Alicea v. Thomas*, 815 F.3d 283, 289-91 (7th Cir. 2016) ("Permitting substantial escalation of force in response to passive noncompliance would be incompatible with [the appellate court's] excessive force doctrine and would likely bring more injured citizens before our courts."). Defendant is not entitled to summary judgment.

Nor is Defendant entitled to qualified immunity, which protects government officials from liability when their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about. *Alicea*, 815 F.3d at 291 (citing *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)). It has long been established that using a significant level of force on a non-resisting or passively resisting individual constitutes excessive force. *See, e.g.*, *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) (holding that no reasonable officer could

believe that punching a person who was not attempting to flee or not physically resisting was reasonable).

Gohre was not resisting (or, at most, he was only passively resisting) when Defendant pushed him into the wall with so much force that Gohre's head and face repeatedly collied with the wall, leaving him disoriented and dazed. Given that case law at the time of the incident clearly established that an officer cannot use more than minimal force against a person who is only passively resisting, Defendant is not entitled to qualified immunity on this record. *See, e.g.*, *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (acknowledging that officers do not have a right to "shove, push, or otherwise assault" people without provocation).

## NEXT STEPS

Gohre's claim against Defendant will proceed to trial. Given the complexity of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court concludes that Gohre lacks the capacity to represent himself in the next stage of litigation. Accordingly, the Court will make efforts to recruit a volunteer lawyer to represent him.

The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Gohre to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify Gohre in the event a lawyer volunteers. In the meantime, the Court encourages the parties to explore settlement. If the parties would like to try mediation, the Court can refer the case to a magistrate judge for that purpose. If at any time Gohre decides he would like to proceed on his own without a lawyer, he should promptly notify the Court, and the Court will schedule a status conference to set a trial date.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 26) is **DENIED**.

Dated at Green Bay, Wisconsin this 27th day of September, 2022.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
